UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re                                                      :
                                                           :
OLD HB, INC. (f/k/a Hostess Brands, Inc.),                 :
*et al.*,                                                    :
                                                           :
                              Debtors.                     :        14-cv-6750 (NSR)
---------------------------------------------------------------X
ACE AMERICAN INSURANCE COMPANY,                            :
*et al.*,                                                    :        OPINION AND ORDER
                                                           :
                              Appellants,                  :
             -against-                                     :
                                                           :
OLD HB, INC. (f/k/a Hostess Brands, Inc.)                  :
*et al.*,                                                    :
                                                           :
                              Appellees.                   :
---------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

      This appeal arises from bankruptcy cases filed by Old HB, Inc. (previously known as

Hostess Brands, Inc.), and its affiliates (collectively, "Hostess," "Appellees," or "Debtors") on

January 11, 2012. ACE American Insurance Company, *et al.* (collectively, "ACE" or

"Appellants") issued high-deductible automobile liability policies to Hostess, which covered a

large fleet of commercial vehicles throughout the country.

      On July 15, 2014, the U.S. Bankruptcy Court for the Southern District of New York

entered an order (the "New Bar Date Order") granting Hostess's motion requesting a new Bar

Date for a group of claimants with potential claims against Hostess that may be covered by an

automobile liability policy (collectively, the "AL Claimants") and barring, estopping, and

enjoining those AL Claimants who failed to file a proof of claim in the bankruptcy court by the



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1 / 5 / 2015

1

New Bar Date from asserting claims against both Hostess and its insurers. ACE opposed this motion in the Bankruptcy Court.

Appellants filed an appeal from the portion of the New Bar Date Order that permanently bars the AL Claimants' claims against ACE, recovery from proceeds of insurance policies issued by ACE, and/or participation in distribution from ACE (collectively, the "Third-Party Permanent Injunction").

Appellees now move for dismissal of the appeal from the Bankruptcy Court's Order. Appellees filed the instant motion on November 12, 2014. For the reasons that follow, Appellees' motion is GRANTED.

## I.   BACKGROUND[1]

ACE issued multistate automobile liability insurance policies to Hostess. For the period spanning 2003 through 2012, the Debtors are insured for automobile accidents under these policies; each policy contains a $1.5 million deductible and a $3.5 million per-accident limit, and the Debtors were required to post collateral to secure their deductible obligations under these policies. (Debtors' Appellee Brief at 3 [hereinafter Hostess Brief]; Opening Br. of Appellants at 6 [hereinafter ACE Brief].) ACE and Hostess are also parties to a Collateral Agreement effective as of January 1, 2007, which provides that ACE pays the first $3.5 million in losses and expenses for each individual automobile liability claim and then can draw on the collateral ACE holds for the first $1.5 million if Hostess fails to reimburse.[2] (Appellants' Br. Opp'n to Appellees' Mot. to Dismiss Appeal at 4-5 [hereinafter, ACE Opp'n Br.]; Hostess Brief at 3.)

---

[1] The following background facts and procedural history are taken from the parties' submissions on this motion and their appellate briefs, and do not appear to be in dispute unless otherwise noted.
[2] An additional stipulation between the parties, approved by the Bankruptcy Court on January 17, 2013, states that ACE "shall" use the collateral it holds to pay or reimburse itself for Hostess's obligations on or after November 12, 2012. (ACE Brief at 6; Hostess Brief at 3.)

The Bankruptcy Court issued two bar date orders prior to the one at issue here. One order established April 24, 2012 as the deadline for claimants to file proofs of claim for claims arising before the bankruptcy petition date; the second established March 28, 2013, as a similar deadline for claims arising after the petition date but prior to January 31, 2013 (after Debtors ceased operating). The first bar date (April 2012) was extended to February 17, 2014, after the Debtors amended their schedule of liabilities for a number of claimants. (Hostess Brief at 4.) These two orders provide that claimants who failed to file the appropriate claim forms are forever barred and estopped from pursuing those claims against the estates of the Debtors. The Debtors served notice of the bar date orders, which explained the proof of claim requirement, on all parties that might assert automobile liability claims. (Hostess Brief at 5.)

A group of 147 potential claimants did not file proofs of claim in accordance with the prior bar date orders and reside in states that require claimants to obtain a judgment against the insured before recovery can be sought from an insurer. (Hostess Brief at 5.) In response to uncertainty regarding the impact of the prior bar date orders, Hostess sought the entry of the New Bar Date Order at issue here. In addition to establishing a new bar date for filing proofs of claim, the proposed order would channel filed claims to alternative dispute resolution for recovery. Each holder of a potential claim that would be affected by the proposed order was served with the Debtors' motion, and none objected. ACE objected to the motion, arguing that they might be held liable for some of the unfiled claims at a later time. (ACE Brief at 7.) On July 8, 2014, the Bankruptcy Court conducted a hearing on the motion, and found that it could enter a third-party injunction barring claims that otherwise might be brought against Hostess's insurers based on the circumstances of this case. The Bankruptcy Court believed that claimants who had received notice and failed to object would be precluded by *res judicata* should they later attempt to

collaterally attack the New Bar Date Order. (Hostess Brief at 7.) The New Bar Date Order was entered on July 15, 2014. (Decl. of Wendy M. Simkulak at Ex. 8.)

## II.    LEGAL STANDARD

The question here is whether ACE has standing to appeal a portion of the New Bar Date Order entered by the Bankruptcy Court. "[I]n order to have standing to appeal from a bankruptcy court ruling, an appellant must be 'a person aggrieved'—a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court." *In re DBSD North America, Inc.*, 634 F.3d 79, 89 (2d Cir. 2011) (quoting *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991)); *see also Sumpter v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 468 B.R. 603, 612 (S.D.N.Y. 2012). "The 'aggrieved person' standard requires that an appellant show both 'injury in fact' under Article III, and that the injury suffered is direct and financial." *In re DPH Holdings Corp.*, 468 B.R. at 612; *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 642 (2d Cir. 1988).  The aggrieved person standard is "stricter than Article III's injury in fact test, and its stringency is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) (internal quotation marks and citation omitted). "Appellant[s] cannot proceed with this appeal if [they] cannot demonstrate that [they] suffered a direct financial injury as a result of the Order." *In re Assante*, No. 12 CV 5309, 2013 WL 787968, at *2 (S.D.N.Y. Mar. 4, 2013) (internal citations omitted).

In addition to satisfying the aggrieved person standard, an appellant must also establish prudential standing, meaning that the appellant must "assert his own legal rights and not those of third parties." *Freeman v. Journal Register Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010).

### III.    DISCUSSION

Appellants argue ACE will suffer from three types of harm because of the Third-Party Injunction: (1) actions by claimants; (2) regulatory action; and (3) the possibility that ACE may be forced to return some collateral. First, ACE asserts that it faces harm from AL Claimants who continue to pursue their claims because it will be forced to pay the claims and to pay defense counsel. Second, Appellants allege that they are harmed by being forced to expend resources to respond to regulatory complaints, and may have to pay fines and/or penalties in the future. Finally, ACE argues that the New Bar Date Order directly affects ACE's financial interests in the Collateral that it holds, because Appellants believe Hostess plans to argue in a pending arbitration between the parties that ACE is over-collateralized.

#### A.  Harm from Actions by Claimants

ACE asserts it faces "real and substantial harm from claimants actively pursuing claims" both in the form of payment to claimants and in the form of payments to defense counsel. (ACE Opp'n Brief at 11.) For example, one individual enjoined by the Third-Party Permanent Injunction served Hostess with a lawsuit after the New Bar Date passed.[3] ACE alleges that it is ostensibly prevented from fulfilling state and federal obligations with respect to this claim, and has had to consult with defense counsel, incurring costs which confer Appellants with standing to appeal.

The evidence presented to support ACE's assertion that it faces harm from claimants amounts to the one aforementioned lawsuit, filed in state court by an AL Claimant. While this lawsuit was served on the Debtors in October 2014, after the New Bar Date Order had passed, it appears that the lawsuit was actually commenced March 12, 2014, *before* the New Bar Date

---

[3] It appears that while the lawsuit was filed before the New Bar Date had passed, it was not served on Hostess until October 2014. (Decl. of Carolyn Burkhart at Ex. A.)

Order was entered by the Bankruptcy Court. (Decl. of Carolyn Burkhart at Ex. A) To suggest that having to defend against this claim is a direct and adverse pecuniary effect of the Order hardly makes sense, as the lawsuit existed even before the Order did. There is no evidence before this Court that any other AL Claimant has attempted to recover after the New Bar Date Order was entered, let alone that such an attempt to recover is a direct effect of the Order.

Even if another AL claimant did seek to recover in state court, however, it is not clear that ACE would have to pay the claim. It is only by waging a successful collateral attack that a claimant would be able to bring a lawsuit that could potentially harm ACE, since none of the claimants objected to or appealed the Order. The Supreme Court has ruled that once a bankruptcy court's injunction becomes final, any enjoined parties who had notice and an opportunity to object, but did not do so, cannot later collaterally attack the order. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150-53 (2009). This is because the "'finality interests' of res judicata 'are particularly important in the bankruptcy context, where numerous contending claims and interests are gathered, jostle, and are determined and released.'" *In re American Preferred Prescription, Inc.*, 255 F.3d 87, 93 (2d Cir. 2001) (quoting *Corbett v. MacDonald Moving Serv., Inc.*, 124 F.3d 82, 91 (2d Cir. 1997)). Accordingly, there is "no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest . . . did have jurisdiction of the subject matter of the litigation." *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938); *accord Steiker Co. v. Eccelston Props. Ltd.*, 593 N.Y.S.2d 394 (N.Y. sup. Ct. 1992) (applying *Stoll* and rejecting creditor's attempt to sue non-debtor in state court where defendant had been issued third party release by bankruptcy court). If the AL Claimants thus appear to be barred from collaterally attacking the New Bar Date Order, then it is even less likely that ACE will be

6

forced to pay any of these claims. The harm from claimants that ACE asserts are too speculative to provide Appellants with standing in this appeal.

### B.  Harm from Regulatory Actions

There is some dispute concerning whether ACE waived its arguments concerning regulatory action, but the Court need not decide this question. The evidence presented by ACE to establish standing based on regulatory inquiries can best be described as flimsy and insufficient to confer standing.

ACE submitted five letters that it received from state regulators inquiring into claims against Hostess that had not been paid. (*See* Decl. of David Rush Exs. A-E.) ACE claims that the fact that only one of these letters relates to an AL Claimant and that none of the complaints were received after entry of the New Bar Date Order is irrelevant; these facts, however, are highly probative. ACE, as the party seeking to appeal, must show that it has been directly harmed by the Order in order to establish standing. *See Kane*, 843 F.2d at 642; *In re Assante*, 2013 WL 787968, at *2. None of these inquiries from state regulators are actually a result of the Bankruptcy Court's Order and thus do not show that ACE was directly and adversely affected by the Order. Even if ACE had to expend resources to respond, it would have had to do so regardless of whether the New Bar Date Order was entered or not, as these inquiries were all received before entry of the Order and such responses are a regular component of doing business in the regulated insurance industry. The harm, as asserted by ACE, was not *caused* by the New Bar Date Order.

In addition, ACE has not shown any actual evidence that would lead this Court to believe that state regulators will choose to flout or ignore the Bankruptcy Court's Order. For example, none of the letters provided show any threats regarding further inquiries due to a failure to process claims barred by the New Bar Date Order. ACE does not assert that it responded to

regulators by explaining the Bankruptcy Court's Order and was then investigated or fined, or threatened with such. Appellants only speculate as to what the regulators might do. Mere speculation is insufficient to establish standing as a matter of law. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 583 (1992) ("The injury or threat of injury must be both real and immediate, not conjectural, or hypothetical." (internal quotations removed)).

Even if the possibility exists that ACE might have to defend against regulatory complaints and/or civil actions in the future, this does not give ACE standing to appeal the Bankruptcy Court's Order. "[A] bankruptcy court's order does not produce the direct and adverse pecuniary impact necessary to bestow standing on an appellant if the order's effect is merely to expose it to the risks of litigation." *In re First Cincinnati, Inc.*, 386 B.R. 49, 53 (B.A.P. 6th Cir. 2002). "[M]any courts have held that being 'subject[ed] to the possibility of future litigation' by a bankruptcy court is 'insufficient to confer standing' on appeal." *In re Indu Craft, Inc.*, (S.D.N.Y. 2012) (quoting *Fidelity Bank Nat'l Ass'n v. MM Grp., Inc.*, 77 F.3d 880, 883 (6th Cir. 1996)); *see also In re LTV Steel Co., Inc.*, 560 F.3d 449 (6th Cir. 2009) (finding that even actual filing of lawsuit rather than threat of one did not confer standing to appeal); *Travelers Insurance Co. v. H.K. Porter Co.*, 45 F.3d 737, 743 (3rd Cir.1995) ("Standing is precluded if the only interest in the bankruptcy court's order that can be demonstrated is an interest as a potential defendant in an adversary proceeding"); *In re Fondiller,* 707 F.2d 441, 443 (9th Cir.1983) ("[A]ppellant's only demonstrable interest in the [bankruptcy court's] order is as a potential party defendant in an adversary proceeding. As such, she is not a 'person aggrieved' by [the order]"); *In re Ashford Hotels, Ltd.*, 235 B.R. 734, 739 (S.D.N.Y. 1999) (concluding appellants lacked standing where interest was only as potential defendant); *In re Teligent, Inc.*, 417 B.R. 197, 210-

8

11 (Bankr. S.D.N.Y. 2009) (finding party whose only interest was as defendant had no pecuniary interest in order and no standing to appeal).

### C.  Harm from Arbitration Dispute Over Collateral

ACE also alleges that it will suffer direct and adverse pecuniary harm if Hostess, armed with the New Bar Date Order, succeeds in persuading an arbitration panel that the Third-Party Injunction protects ACE from liability to the AL Claimants, and thus ACE has no need for collateral in connection with those claims. But this "harm," if any, does not flow from the Order directly. ACE is free to make any of the arguments it seeks to raise in this appeal to the arbitration panel; nothing in the New Bar Date Order requires the arbitration panel to find that ACE is not entitled to the collateral related to the claims of the AL Claimants.

Even if the arbitration panel does find that ACE is over-collateralized and requires ACE to return collateral related to these claims, no harm comes about unless ACE is actually required to pay the claims. Any harm that could result requires several intervening steps involving third-party decisions or actions—a finding by the arbitration panel that ACE is over-collateralized, a return of collateral to Hostess from ACE, the filing of a claim by an AL Claimant in state court, and a state court's finding that state insurance laws trump the injunction and that the claim must be paid—and thus cannot be said to be a direct effect of the New Bar Date Order.

### D.  Public Interest Standing

In the alternative, ACE argues that appellants have standing to appeal in the public interest. It is true that "even absent a direct pecuniary interest in the litigation, a public interest may also give a sufficient stake in the outcome of a bankruptcy case to confer appellate standing." *In re Zarnel*, 619 F.3d 156, 162 (2d Cir. 2010). The Supreme Court, for example, has determined that the Securities and Exchange Commission has a sufficient interest in "the

maintenance of its statutory authority and the performance of its public duties" to give the Commission standing to pursue a bankruptcy appeal. *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459-60 (1940). The Second Circuit has similarly concluded that a U.S. Trustee "is responsible for protecting the public interest and ensuring that bankruptcy cases are conducted according to law. . . . [T]hat interest gives him standing to appeal." *In re Zarnel*, 619 F.3d at 162. But ACE has no such authority or responsibility to the public interest that would give it standing. As Appellants assert, "ACE is seeking to protect itself from actions by [non-filing] claimants and by regulators on their behalf." (ACE Opp'n Br. at 23 n.31.) Appellants' private interest in challenging the Order and the fact that the issues surrounding the New Bar Date Order are largely, if not entirely, private matters, easily distinguish this case from the cases in which the Supreme Court and Second Circuit found that standing existed based on an entity's responsibility to protect the public interest.

### E.  Prudential Standing

It is possible that the claimants who are barred by the New Bar Date Order and are no longer able to pursue their claims would have standing to appeal the New Bar Date Order. But ACE cannot raise the claims of these non-filing claimants on appeal from the Bankruptcy Court. *See Freeman v. Journal Register Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010); *In re Quigley Co.*, 391 B.R. 685, 705 (Bankr. S.D.N.Y. 2008).

*          *          *

The problem with ACE's alleged harms is that they are all speculative or too many steps removed from the bankruptcy court's order—"*If a claim is filed*, ACE will have to defend against it or else permit entry of a default judgment" (ACE Opp'n Br. at 12) (emphasis added); "regulatory actions are likely to continue *if claimants continue to pursue their claims* against

ACE" (ACE Opp'n Br. at 16) (emphasis added); and "ACE will also suffer direct and adverse pecuniary harm *if Hostess succeeds* in persuading the arbitration panel . . ." because "*if a state court ultimately determines* that state insurance law trumps the Bankruptcy Court's injunction . . . ACE will still be required to defend and pay the claim" (ACE Opp'n Br. at 22) (emphasis added). Appellants have asserted various ways in which ACE may be harmed by the Order if and only if certain other events come to pass, but Article III and the aggrieved person standard require more than simply speculative future harm. Standing to appeal from a bankruptcy order requires that the party seeking to appeal demonstrate *actual* injury, and that such injury be financial and a *direct* result of the Court's order. ACE has not met its burden of showing that it has been directly and adversely affected pecuniarily by the Bankruptcy Court's order at this time and thus lacks standing.

For these reasons, the motion is granted.

## IV.   CONCLUSION

For the foregoing reasons, Appellees' motion to dismiss the appeal is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion at Docket No. 34 and to terminate this case.

SO ORDERED.

Dated: January 5, 2015                           SO ORDERED:
       White Plains, New York

                                          _____
                                          NELSON S. ROMÁN
                                          United States District Judge